**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TEXARKANA DIVISION**

| | |
|---|---|
| DANCO, INC., | |
|     Plaintiff, | |
| v. | Civil Action No.: 5:16-CV-00073-JRG-CMC |
| FLUIDMASTER, INC., | |
|     Defendant. | |

**PLAINTIFF DANCO, INC.'S**
**<u>OPENING CLAIM CONSTRUCTION BRIEF</u>**

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................................... 1

    A.  The Relevant Technology and the Invention of the Asserted '620 and '687 Patents ............ 1

    B.  The Claims at Issue ......................................................................................................... 2

    C.  The Claim Terms and Phrases at Issue ........................................................................... 2

    D.  Summary of Claim Construction Issues to Be Resolved By the Court .............................. 3

II.   LEGAL PRINCIPLES FOR CONSTRUING PATENT CLAIMS ............................................ 5

III.  LEVEL OF ORDINARY SKILL IN THE ART ...................................................................... 6

IV.  CONSTRUCTIONS OF THE CLAIM TERMS IDENTIFIED BY BOTH PARTIES .............. 7

    A.  "detachably attached" ('620 Patent: Claim 1; '687 Patent: Claims 4, 14) .......................... 7

    B.  "flush valve" ('620 Patent: Claims 1, 21; '687 Patent: Claims 4, 14)................................. 9

    C.  "dual flush canister" ('620 Patent: Claims 1, 6, 11, 14; '687 Patent: Claims 4, 7, 9, 14, 17, 19, 20)) ................................................................................................................................. 12

V.   CONSTRUCTIONS OF THE REMAINING CLAIM TERMS IDENTIFIED ONLY BY FLUIDMASTER AS ALLEGEDLY NEEDING CONSTRUCTION .................................... 14

    A.  "gasket" ('620 Patent: Claims 1, 21) ............................................................................. 14

    B.  "detachably attached to the flush mechanism" ('620 Patent: Claim 1) ........................... 16

    C.  "adaptor" ('620 Patent: Claims 4, 11, 12, 21) ............................................................... 17

    D.  "rotatably coupled" ('620 Patent: Claim 12) .................................................................. 18

    E.  "actuator" ('620 Patent: Claim 22) ................................................................................. 20

    F.  "adapter" ('687 Patent: Claim 14) .................................................................................. 21

    G.  "mate" / "configured to mate" / "configured to mate to a flush valve opening" ('687 Patent: Claim 14) ................................................................................................................. 22

    H.  "basket structure" ('687 Patent: Claims 4, 9, 13, 14, 19, 20)........................................ 24

    I.  "second end" ('687 Patent: Claims 4, 13, 14, 20)......................................................... 26

    J.  "couple to the dual flush canister" ('687 Patent: Claims 4, 14, 20) ................................ 27

VI.  FLUIDMASTER'S CONTENTIONS AS TO CLAIM PHRASES PROPOSED TO BE COVERNED BY 35 U.S.C. § 112, PARA. 6 ................................................................... 28

    A.  These terms are not "means-plus-function" claims under 35 U.S.C. § 112, para. 6 .......... 29

    B.  Fluidmaster does not proposed a separate, specific construction for any of these claim phrases beyond the § 112, ¶ 6 allegations ........................................................................................ 30

VII.   CONCLUSION ............................................................................................................. 30

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*3M Innovative Props. Co. v. Avery Dennison*, 350 F.3d 1365 (Fed. Cir. 2003)........................ 25, 26

*Auxilium Pharms., Inc. v. Watson Labs., Inc.*, Civil Action No. 12-3084 (JLL), 2014 U.S. Dist. LEXIS 79962 (D.N.J. June 11, 2014) ....................................................................................................... 3

*CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359 (Fed. Cir. 2002)........................................... 25

*E-Pass Techs., Inc. v. 3Com Corp.*, 343 F.3d 1364 (Fed. Cir. 2003) .................................................. 5

*Helmsderfer v. Bobrick Washroom Equip., Inc.*, 527 F.3d 1379 (Fed. Cir. 2008)............................. 4

*K-2 Corp. v. Salomon S.A.*, 191 F.3d 1356 (Fed. Cir. 1999)............................................................. 10

*Karlin Tech., Inc. v. Surgical Dynamics, Inc.*, 177 F.3d 968 (Fed. Cir. 1999)................................... 9

*Oatey Co. v. IPS Corp.* 514 F.3d 1271 (Fed. Cir. 2008) ............................................................ 15, 24

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) ............................................................ passim

*Poly-Am., L.P. v. API Indus., Inc.*, 839 F.3d 1131 (Fed. Cir. 2016) ................................................. 25

*SmartPhone Techs. LLC v. Research in Motion Corp.*, No. 6:10-CV-74-LED-JDL, 2012 WL 489112 (E.D. Tex. Feb. 13, 2012)............................................................................................................... 4

*Smith v. Snow*, 294 U.S. 1 (1935)..................................................................................................... 26

*Superguide Corp. v. DirecTV Enters., Inc.*, 358 F.3d 870 (Fed. Cir. 2004) ...................................... 5

*Tex. Instruments, Inc. v. United States ITC,* 805 F.2d 1558 (Fed. Cir. 1986) ........................... 15, 24

*Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362 (Fed. Cir. 2012) ........................... 5, 24

*Unwired Planet, LLC v. Apple Inc.*, 829 F.3d 1353 (Fed. Cir. 2016) ......................................... 12, 20

*Vision Advancement, LLC v. Vistakon*, No. 2:05cv455, 2007 U.S. Dist. LEXIS 5742, (E.D. Tex. Jan. 26, 2007) ...................................................................................................................................... 6

*Vitronics Corp. v. Conceptronics Inc.*, 90 F.3d 1576 (Fed. Cir. 1996)...................................... 15, 24

**LIST OF EXHIBITS**

Exhibit A:   United States Patent No. 8,943,620 issued February 13, 2015

Exhibit B:   United States Patent No. 9,181,687 issued November 10, 2015

Exhibit C:   Danco's P.R. 3-1 Infringement Contentions

Exhibit D:   Danco's Preliminary Election of Asserted Claims

Exhibit E:   Danco's P.R. 4-1 Proposed Terms and Claim Elements for Construction

Exhibit F:   Danco's P.R. 4-2 Preliminary Claim Constructions

Exhibit G:   Fluidmaster's P.R. 4-1 Proposed Terms and Claim Elements for Construction

Exhibit H:   Fluidmaster's P.R. 4-2 Preliminary Claim Constructions

Exhibit I:   Declaration of Chad H. Jones

Exhibit J:   Random House Webster's Unabridged Dictionary, Second Edition (1999)

Exhibit K:   Webster's Third New International Dictionary of the English Language Unabridged (3d ed. 2002)

Exhibit L:   Fluidmaster IPR Petition for the '620 Patent

Exhibit M:   ASME Standard A112.19.10-1994

Exhibit N:   ASME Standard A112.19.2M-1998

Exhibit O:   Fluidmaster's U.S. Patent No. 8,250,681

Exhibit P:   Fluidmaster webpage found at http://www.fluidmaster.com/toilet/part-type/flush-valves/

Exhibit Q:   Declaration of Stephen E. Maple from Fluidmaster's IPR Petition for the '620 Patent

Exhibit R:   Declaration of Stephen E. Maple from Fluidmaster's IPR Petition for the '687 Patent

Exhibit S:   Fluidmaster IPR Petition for the '687 Patent

Exhibit T:   Table of Terms for Construction and Danco's Proposed Constructions

## I.    INTRODUCTION

Plaintiff Danco, Inc. ("Danco") hereby respectfully submits its Opening Brief on Claim Construction in accordance with P.R. 4-5(a) and the Fourth Amended Docket Control Order.  (Docket Entry # 83 at 5). As required by P.R. 4-5(a), this Opening Brief sets forth Danco's opening brief and any evidence supporting its claim construction."

### A.    The Relevant Technology and the Invention of the Asserted '620 and '687 Patents

Danco is one of the largest plumbing repair, replacement, and remodel suppliers in the home improvement industry. Danco offers for sale its innovative plumbing solutions through various nationwide retailers, such as Home Depot and Lowe's. Danco's innovative plumbing solutions include a number of inventions related to novel toilet fill valves and flush valves, including dual-flush converters that quickly and easily convert a standard toilet into a water-saving dual flush toilet. These inventions include, but are not limited to, the dual flush designs disclosed in U.S. Patent No. 8,943,620 ("the '620 Patent") and U.S. Patent No. 9,181,687 ("the '687 patent").

Generally, when a toilet is flushed, an apparatus known as a "flush valve" controls the release of water stored in the toilet's tank. Conventional toilets feature a single-flush capability that typically results in more water than necessary being used to flush different types of waste. Dual flush technology can help in water conservation efforts by providing reduced water volumes released through the flush valve when a toilet is flushed.[1]  The inventions of Danco's '620 Patent and '687 Patent – each entitled "Adaptation of Flush Valve for Dual Flush Capability" – are generally directed to systems and methods for adapting preexisting single-flush flush valves so that they are compatible with flush mechanisms, such as dual-flush canisters, without having to replace either the entire toilet tank and/or the entire existing flush valve. Specifically, the Abstract of the '620 and '687 Patents states that the patents-in-suit disclose "[v]arious apparatuses and methods that facilitate dual flush capability."  (*See* Ex. A ('620

---

[1] For the Court's convenience, Danco has this day provided the Court with two video presentations further illustrating the relevant technology and invention of the '620 and '687 Patents.

Patent) and Ex. B ('687 Patent) at "Abstract"). The Abstract further describes "a dual flush mechanism configured to provide for a dual flush capability in a toilet," where "[t]he dual flush mechanism can include a basket structure" and an attached "gasket" that "can form a seal between the dual flush mechanism and a flush orifice of a flush valve." (*Id.*). As a result, the dual flush mechanism can be installed with the existing toilet flush valve to provide dual flush capability. (*Id.*).

### B.  The Claims at Issue

As set forth in Danco's Disclosure of Asserted Claims and Infringement Contentions (Ex. C hereto), and as limited in accordance with General Order No. 13-20 in Danco's Preliminary Election of Asserted Claims (Ex. D hereto), Danco alleges that Defendant Fluidmaster, Inc. "(Fluidmaster) has directly infringed and continues to infringe Claims 1-2, 4, 11-12 and 20 of the '620 Patent. Danco further contends that Fluidmaster has indirectly infringed and continues to infringe Claims 21-22 of the '620 Patent. Danco further contends that Fluidmaster has directly infringed and continues to infringe at least Claims 4, 7, 9, 13-15, 17, and 19-21 of the '687 Patent. (Ex. C at 2; Ex. D at 2).

### C.  The Claim Terms and Phrases at Issue

In its P.R. 4-1 exchange of Proposed Terms and Claim Elements for Construction, Danco identified three terms of the '620 and '698 Patents ("detachably attached," "flush valve," and "dual flush canister") that should be construed by the Court.  (*See* Ex. E). Because Danco contends the corresponding terms in the two patents should be ascribed consistent constructions, Danco has identified three discrete claim terms/phrases as needing construction by the Court:

| Disputed Claim Term/Phrase | Danco's Proposed Construction |
|---|---|
| **"detachably attached"**<br><br>('620 Patent: Claim 1)<br>('687 Patent: Claims 4, 14) | *"removably retained"* |
| **"flush valve"**<br><br>('620 Patent: Claims 1, 21)<br>('687 Patent: Claims 4, 14) | *"a valve located at the bottom of a toilet tank used to discharge water from the toilet tank to a toilet bowl"* |

| **"dual flush canister"**<br><br>('620 Patent: Claims 1, 6, 11, 14)<br>('687 Patent: Claims 4, 7, 9, 14, 17, 19, 20) | *"cylindrical-shaped mechanism providing for two flush volumes"* |
|---|---|

Danco's P.R. 4-2 exchange of Preliminary Claim Constructions remained consistent with its P.R. 4-1 disclosure: the above-identified three terms require construction by the Court and all remaining disputed claim terms do not require construction and should, instead, be ascribed their plain and ordinary meaning as understood by a person of ordinary skill in the art.  (*See* Ex. F).

Fluidmaster, on the other hand, initially contended that 41 claim terms/phrases require construction by the Court and that another 17 phrases should be governed by the means-plus-function provisions of 35 U.S.C. § 112, ¶ 6. (*See* Ex. G at 2-6). In its subsequent P.R. 4-2 disclosures, however, Fluidmaster abandoned its position as to the necessity for the Court to construe 17 of the 41 terms it originally proposed and conceded that those 17 terms should, instead, be attributed their plain and ordinary meaning. (*See* Ex. H at 2-5). Fluidmaster similarly withdrew 12 of its 17 contentions that certain claim phrases should be governed by 35 U.S.C. § 112, paragraph 6 (*see id.* at 5-7), but then newly contended that for six disputed terms that "[s]tructure [was] identified in 112(6) contention[s]." (*Id.* at 4-5).

The parties have set forth their respective positions on the construction of each of these terms in the Joint Claim Construction and Prehearing Statement. (*See* Docket Entry #72). The parties agree that the three terms proposed by Danco should be construed by the Court. The parties do not agree that the five additional terms/phrases in the asserted claims of the '620 Patent and 18 additional terms or phrases of the '687 Patent proposed by Fluidmaster for construction actually require construction by the Court.

### D.  Summary of Claim Construction Issues to Be Resolved By the Court

The '620 and '687 Patents are straightforward mechanical patents that can generally be understood by a lay juror. The meaning of each of the three specialized terms identified by Danco for construction can easily be determined from reference to the plain language of the claims, the specifications, the file histories, and applicable industry standards known to a person of ordinary skill in the art of

plumbing/toilet component design. Moreover, because the plain and ordinary meaning of each of the remaining disputed terms used in the '620 and 687 Patents is the same meaning that a lay juror would comprehend without additional definition or guidance from the Court, Danco respectfully submits that formal constructions by the Court of these additional terms are unnecessary.  Thus, these terms are entitled to their plain and ordinary meaning.

On the other hand, many of Fluidmaster's proposed constructions violate one of the cardinal rules of claim construction by importing one or more limitations from the specification into the claims. In the Federal Circuit's seminal case on claim construction, *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005), the Court stated in no uncertain terms that "[t]o avoid importing limitations from the specification into the claims, it is important to keep in mind that the purposes of the specification are to teach and enable those of skill in the art to make and use the invention and to provide a best mode for doing so." Contrary to the teachings of *Phillips* and its progeny, Fluidmaster's unduly-limiting constructions admittedly attempt to limit each of the disputed claim terms to *only one* specific embodiment (among a number of example embodiments) described and depicted in the respective specifications of the '620 and '687 Patents.  As such, as discussed in more detail below, Fluidmaster's proposed constructions are improper, and must be rejected by the Court.

Moreover, because the Fluidmaster has attempted to amend its P.R. 3-3 Invalidity Contentions out-of-time, and the Court has not granted leave to Fluidmaster to belatedly amend its contentions, Fluidmaster is not permitted to use the claim construction process as an end-run around the Court's DCO and Local Patent Rule requirements for the timely disclosure of *all* of Fluidmaster's indefiniteness contentions. *See, e.g.*, P.R. 3-3(d) ("each party opposing a claim of patent infringement, shall serve on all parties its "Invalidity Contentions" which must contain … *[a]ny* grounds of invalidity based on indefiniteness under 35 U.S.C. § 112(2) or enablement or written description under 35 U.S.C. § 112(1) of any of the asserted claims." (emphasis added)).

Indeed, numerous district courts have found that if a party does not include indefiniteness allegations in its invalidity contentions that party cannot later try and correct its error by arguing indefiniteness under the guise of claim construction. *See, e.g., Auxilium Pharms., Inc. v. Watson Labs., Inc.*, Civil Action No. 12-3084 (JLL), 2014 U.S. Dist. LEXIS 79962, at *12-13 (D.N.J. June 11, 2014) ("Here, because Watson did not raise an indefiniteness defense in its invalidity contentions, the Court concludes Watson cannot now seek a determination that the patents-at-issue are invalid for indefiniteness through claim construction."). Because all but one of Fluidmaster's indefiniteness arguments are not properly at issue in this case, Fluidmaster is not permitted to raise these untimely arguments during claim construction. Consequently, Danco does not address in its Opening Brief the various allegations of indefiniteness and/or lack-of-enablement set forth in Fluidmaster's portion of the Joint Claim Construction Statement that were not timely included in its P.R. 3-3 contentions.[2]

## II.   LEGAL PRINCIPLES FOR CONSTRUING PATENT CLAIMS

The claims of a patent define the invention to which the patentee is entitled the right to exclude. *Phillips*, 415 F.3d at 1312. Claim terms are given their ordinary and customary meaning to one of ordinary skill in the art at the time of the invention, unless there is clear evidence in the patent's specification or prosecution history that the patentee intended a different meaning. *Id.* at 1312-13. Claim construction is informed by the intrinsic evidence: the patent's specification and file history. *Id.* at 1315-17. Courts may also consider evidence such as dictionary definitions and treatises to aid in determining the ordinary and customary meaning of claim terms. *Id.* at 1322.[3] Further, "[o]ther claims, asserted and unasserted, can provide additional instruction because 'terms are normally used consistently throughout the patent.'" *SmartPhone Techs. LLC v. Research in Motion Corp.*, No. 6:10-

---

[2] *See* Docket Entry # 75 at 7 (Danco's objection to Fluidmaster's inclusion of its out-of-time invalidity-indefiniteness arguments in its portions of the Joint Claim Construction Statement ("JCCS")). Fluidmaster included only one indefiniteness/lack-of-enablement contention in its P.R. 3-3 Invalidity Contentions. (*See* Docket Entry # 75 at 5).

[3] "When the intrinsic evidence is silent as to the plain meaning of a term, it is entirely appropriate for the district court to look to dictionaries or other extrinsic sources for context—to aid in arriving at the plain meaning of a claim term." *Helmsderfer v. Bobrick Washroom Equip., Inc.*, 527 F.3d 1379, 1382 (Fed. Cir. 2008).

CV-74-LED-JDL, 2012 WL 489112, at *2 (E.D. Tex. Feb. 13, 2012) (citing *Phillips*, 415 F.3d at 1314).

A court should "avoid the danger of reading limitations from the specification into the claim[s]." *Phillips*, 415 F.3d at 1323. For example, "although the specification often describes very specific embodiments of the invention, [the Federal Circuit has] repeatedly warned against confining the claims to those embodiments." *Id.* The Federal Circuit has "expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment." *Id.* This is not only because of the requirements of Section 112 of the Patent Act, but also because "persons of ordinary skill in the art rarely would confine their definitions of terms to the exact representations depicted in the embodiments." *Id.* Limitations from the specification should only be read into the claims if the patentee "acted as his own lexicographer and imbued the claim terms with a particular meaning or disavowed or disclaimed scope of coverage, by using words or expressions of manifest exclusion or restriction." *E-Pass Techs., Inc. v. 3Com Corp.*, 343 F.3d 1364, 1369 (Fed. Cir. 2003); *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1367 (Fed. Cir. 2012).

Similarly, the prosecution history may not be used to infer the intentional narrowing of a claim absent the applicant's clear disavowal of claim coverage. *Superguide Corp. v. DirecTV Enters., Inc.*, 358 F.3d 870, 875 (Fed. Cir. 2004) (citations omitted). "To be given effect, such a disclaimer must be made with reasonable clarity and deliberateness." *Id.*

## III.   <u>LEVEL OF ORDINARY SKILL IN THE ART</u>

A person or ordinary skill in the art ("POSITA") of the '620 and 687 Patents would typically have had: (a) a bachelor's degree in mechanical engineering, or a related field, and two years of experience in the design of plumbing components; or (b) a high school degree and four years of experience in the design of plumbing components. (*See* Ex. I at ¶ 25). A POSITA "would also know and be aware of the applicable related engineering standards, such as, for instance, the following ASME standards:

- "Dual Flush Devices for Water Closets," ASME A112.19.10-1994;

- "Plumbing Fixture Fittings," ASME A112.18.1M-1996;

- "Vitreous China Plumbing Fixtures," ASME A112.19.2M-1998; and

- "Trim for Water-Closet Bowls, Tanks, and Urinals." ASME A112.19.5.1999." (*Id.*).

## IV.   <u>CONSTRUCTIONS OF THE CLAIM TERMS IDENTIFIED BY BOTH PARTIES</u>

### A.   <u>"detachably attached" ('620 Patent: Claim 1; '687 Patent: Claims 4, 14)</u>

| Danco's Proposed Construction | Lavelle's Proposed Construction |
|---|---|
| *"removably retained"* | "designed for direct separation and direct reattachment without degradation (referring to gasket)" |

1. <u>Danco's Position</u>

Claim 1 of the '620 Patent recites "a gasket *detachably attached* to the flush mechanism." Ex. A at 13:35 (emphasis added). The phrase "detachably attached" requires construction because it would not be easily understood by a lay juror. Danco nevertheless contends that "detachably attached" should be given its plain and ordinary meaning, which is "removably retained"—a phrase that would be readily understood by a lay juror.  A POSITA would understand "detachably attached" to mean "removably retained," as it is consistent with the claim phrase's constituent words "detachably" and "attached." (*See* Ex. I at ¶ 29). That is, when an object is "attached" to something, the object is "retained." (*See* Ex. J (defining "attach" as "make fast or join")). Additionally, something that is "detachable" is "removable." (*See* Ex. K (defining "detach" as "to separate")). Accordingly, the plain and ordinary meaning of "detachably attached" is "removably retained."  (*See* Ex. I at ¶¶ 29-32).

Danco's construction of this phrase is also consistent with the specification of the '620 Patent, which discloses at least one embodiment in which a gasket is detachably attached to a flush mechanism indirectly via an adapter. Figure 7A of the '620 Patent, for example, illustrates a cross-section of the gasket 139 attached to the adapter 133, and Figure 9A illustrates how the adapter can detachably attach to a dual flush canister 403. (Ex. A at FIG. 7A and FIG. 9 (annotated)). Figure 7A shows the gasket 139

(blue) can be attached to the adapter 133 (red) using "a pointed end of the inward annular projection 176" that "fits into the pointed annular recess 253" of the adapter 133. (*Id.*) at 6:31-34. The gasket 139 is thereby attached, or *retained*, to the adapter 133.



Figure 9A above shows that mating ears 406 of the dual flush canister 403 (green) can be slid down into the grooves 233 of the adapter 133 and then rotated so that the mating ears 406 rotate within an annular groove in the adapter 133. (*Id.* at 3:62-4:7). In this way, the adapter 133 can be attached, or retained, to the dual flush canister 403. To detach the adapter 133 from the dual flush canister 403, the process of sliding and rotating the mating ears 406 can be reversed so that the adapter 133 can be separated from the dual flush canister 403. (*See id.*). Because the gasket 139 can be attached to the dual flush canister 403 via the detachable adapter 133, the gasket 133 is thus detachably attached—or *removably retained*—to the dual flush canister 403. Thus, Danco's construction of "detachably attached" is consistent with the specification of the '620 Patent.

2. Fluidmaster's Position

Fluidmaster attempts to construe this phrase as "designed for direct separation and direct reattachment without degradation (referring to gasket)." (*See* Docket Entry # 72-2 at 3-4). Fluidmaster's proposed construction is wholly improper, as it is vague and confusing and imports numerous limitations into the claims that are inconsistent with the meaning of the phrase.

First, Fluidmaster's construction should be rejected for being vague and confusing. Fluidmaster's construction includes the phrases "direct separation" and "direct reattachment," but it is unclear what

these phrases actually mean and what would constitute "direct separation" and "direct reattachment" when applying this construction. Certainly, a lay juror would be confused by Fluidmaster's convoluted phraseology. Additionally, Fluidmaster's requirement that the gasket be "designed for *direct* separation and *direct* reattachment" is improper, as it adds limitations that are not necessary under the plain and ordinary meaning of the claim language. It is self-evident that the plain language of the phrase "detachably attached" does not require the attachment to be *direct*. (*See* Ex. I at ¶ 33).

Moreover, Fluidmaster's construction improperly rewrites the claim language to include the notion of reattachment. That is, while the express claim language requires a gasket that is merely "detachably attached," Fluidmaster's construction requires the gasket to be re-attachable (*i.e.* attachable multiple times). There can be no doubt that claims do not require a gasket that must be re-attachable. Fluidmaster's construction also improperly requires the gasket to be re-attachable "without degradation." There is nothing in the claim language, specification, or prosecution history of the '620 Patent that would require the gasket to be non-degradable. Fluidmaster's construction is a thinly veiled invitation for the Court to commit reversible error by improperly re-writing the claim language. *See K-2 Corp. v. Salomon S.A.*, 191 F.3d 1356, 1364 (Fed. Cir. 1999), (stating "[c]ourts do not rewrite claims; instead, [they] give effect to the terms chosen by the patentee").

### B.  "flush valve"  ('620 Patent: Claims 1, 21; '687 Patent: Claims 4, 14)

| Danco's Proposed Construction | Lavelle's Proposed Construction |
| --- | --- |
| *"a valve located at the bottom of a toilet tank used to discharge water from the toilet tank to a toilet bowl"* | "valve which uses a sealing member to ensure water does not leak into the toilet bowl until a flush is initiated" |

1.  Danco's Position

Construction of this phrase by the Court is necessary because "flush valve" is a term of art having a specialized meaning to a POSITA that a lay juror would not readily understand. (*See* Ex. I at ¶ 35). Specifically, to a POSITA, the phrase "flush valve" means "a valve located at the bottom of a toilet

tank used to discharge water from the toilet tank to a toilet bowl." (*Id.*)

To ascertain the proper construction of this phrase, the Court can look to the guidance provided by the American Society of Mechanical Engineers ("ASME")—a professional engineering organization that develops authoritative standards for the plumbing industry. (*See* Ex. I at ¶¶ 36-37; Ex. L at 7). Specifically, ASME publishes at least two standards that expressly define the phrase "flush valve" as the following: "a special form of valve located at the bottom of a flush tank used to discharge the water from the tank into a water closet or urinal." (Ex. M at 8; Ex. N at 11). ASME's definition of "flush valve" is completely consistent with, *and almost identical to*, Danco's construction of this phrase. Fluidmaster cannot reasonably dispute that a POSITA would agree with Danco's construction, as Fluidmaster in its IPR petition challenging the '620 Patent requires a POSITA "know and be aware of" the same ASME standards define a "flush valve" consistent with Danco's construction. (Ex. L at 12).

Moreover, the patents-in-suit use the phrase "flush valve" consistent with Danco's construction and the ASME's definition. Each and every embodiment of a flush valve disclosed in the patents-in-suit is a valve located at the bottom of a toilet tank used to discharge water from the toilet tank to a toilet bowl. (*See*, *e.g.* Ex. A; Ex. I (Jones Decl.) at ¶ 37). When describing a flush valve, the specifications of the patents-in-suit state "[t]he flush valve 100 is generally employed in gravity toilets and includes an orifice 106 through which water drains into a toilet bowl during a flush of a toilet as can be appreciated." (Ex. A at 2:24-26). "[T]he flush valves as described herein are those that are configured to seat a flapper, flush ball, gasket, or other sealing member to ensure that water does not leak into the toilet bowl until a flush is initiated." (*Id.* at 2:31-35). Additionally, the specifications explain that a flush valve is "secure[d] to the bottom of a toilet tank." (*Id.* at 2:38-40). Accordingly, Danco's construction of "flush valve" as "a valve located at the bottom of a toilet tank used to discharge water from the toilet tank to a toilet bowl" is consistent with the specifications of the patents-in-suit.

Fluidmaster's own product literature and patents also demonstrate that a POSITA's understanding of this claim phrase is "a valve located at the bottom of a toilet tank used to discharge water from the toilet tank to a toilet bowl." In fact, Fluidmaster's U.S. Patent No. 8,250,681 teaches that the flush valve 8 illustrated below is a valve located at the bottom of the toilet tank used to discharge water from the toilet tank to a toilet



FIG. 1

bowl. (Ex. O at Fig. 1). Fluidmaster's patent states "[a] water discharge aperture 7 . . . is formed *in the bottom 3 of the tank 1. The discharge aperture 7 is fitted with a flush valve 8 for discharging water from a tank to flush a toilet bowl . . . ." Id.* at 3:11-14 (emphasis added).

Fluidmaster also provides a web page titled "Flush Valves" explaining that "[t]oilet flush valves control the release of water from the tank to the bowl . . . ." (Ex. P). Fluidmaster's web page also includes an illustration of a flush valve, which is clearly located at the bottom of the toilet tank.  (*See* Ex. P at 1). Therefore, Danco's construction of "flush valve" is consistent with the understanding of a POSITA, the specifications of the patents-in-suit, the ASME standards that Fluidmaster requires a



POSITA to know, and Fluidmaster's own teachings regarding flush valves. "Flush valve" means "a valve located at the bottom of a toilet tank used to discharge water from the toilet tank to a toilet bowl."

### 2.   Fluidmaster's Position

Fluidmaster attempts to construe "flush valve" as "valve which uses a sealing member to ensure water does not leak into the toilet bowl until a flush is initiated." The first glaring problem with Fluidmaster's construction is that it fails to incorporate the notion of the valve being located at the

bottom of the toilet tank. As discussed above, the ASME standards—which Fluidmaster requires a POSITA to "know and be award of"—specifically defines "flush valve" to be "a special form of valve *located at the bottom of a flush tank . . . .*" (Ex. M at 8; Ex. N at 11) (emphasis added). Fluidmaster cannot escape the reality that a flush valve is located at the bottom of a toilet tank when the ASME standards Fluidmaster, itself, relies upon in the contemporaneous IPR petitions specifically define it as being located at the bottom of the tank.

Furthermore, Fluidmaster's construction is improper because it requires a "sealing member" to be physically present on the flush valve. (*See* Ex. I at ¶ 38). Fluidmaster's added sealing member requirement conflicts with at least the language of claim 1 of the '620 Patent, which specifically states that "the flush valve is *configured* to seat a sealing member." (Ex. A at 13:39-40) (emphasis added). Thus, while the claim calls for the flush valve to be merely "configured" to seat a sealing member (and not necessarily actually present), Fluidmaster's construction adds a further limitation that the sealing member be actually installed.  Ultimately, Fluidmaster's construction is flawed. This Court should reject Fluidmaster's proposed construction and adopt Danco's for the reasons discussed above.

### C.  "dual flush canister" ('620 Patent: Claims 1, 6, 11, 14; '687 Patent: Claims 4, 7, 9, 14, 17, 19, 20))

| Danco's Proposed Construction | Fluidmaster's Proposed Construction |
|---|---|
| *"cylindrical-shaped device providing for two flush volumes"* | "a dual flush mechanism having at least a partially cylindrical shape" |

### 1.  Danco's Position

Construction of this phrase by the Court is necessary because the phrase "dual flush canister" is a term of art having a specialized meaning to a POSITA. (*See* Ex. I at ¶ 41). Specifically, to a POSITA, the phrase "dual flush canister" means "cylindrical-shaped device for providing for two flush volumes." The only significant difference between the parties' constructions revolves around the meaning of the word "canister" and whether a POSITA would understand it to mean a "cylindrical-shaped device"

(Danco's construction) or a device "having at least a partially cylindrical shape" (Fluidmaster's construction). As Mr. Jones explains in his declaration, a POSITA would immediately recognize that a device that is generally cylindrical. (*See* Ex. I at ¶¶ 40-41).

To the extent there is any doubt that a POSITA would understand "dual flush canister" to mean a cylindrical device as proposed by Danco, the Court can look to the declaration of Steven E. Maple—the purported expert that Fluidmaster relied upon for its two IPR petitions. (*See* Ex. Q at ¶¶ 51, 55; Ex. R at ¶ 82.) Mr. Maple testified that he was Fluidmaster's Vice President of Engineering and Quality from 1994-2007, that he was co-chairman of the Flushing Devices Committee for the Plumbing Manufacturers Institute (PMI) from 2004-2007, and that he developed several ASME standards. (Exs. Q and R at ¶¶ 8-15). Mr. Maple states in his declaration that a POSITA would know a "canister" is something that "looks like a can" and that a can "has a cylindrical shape." (*Id.* at ¶ 51). Notably, Mr. Maple *did not* state that a "canister" is something that has only "at least a *partially* cylindrical shape"— which is Fluidmaster's current overly-broad proposed construction. Therefore, even the testimony of Fluidmaster's own professed expert for the IPR petitions is consistent with Danco's construction that a "dual flush canister" means "cylindrical-shaped device providing for two flush volumes." Consequently, this issue in undisputed.

2. <u>Fluidmaster's Position</u>

Nevertheless, in its proposed construction for "dual flush canister" in this litigation, Fluidmaster attempts to give the phrase "dual flush canister" the overly broad construction of "a dual flush mechanism having *at least a partially cylindrical shape*." Under Fluidmaster's flawed construction, virtually *any* dual flush mechanism would constitute a "dual flush canister," as long as it included *some* feature that was cylindrically-shaped. For example, if a hypothetical dual flush mechanism was generally cubical (*i.e.*, a three-dimensional square) but had a miniscule component that was cylindrical, the mechanism could be considered a "dual flush canister" according to Fluidmaster's incorrect

construction because it would have "at least a partially cylindrical shape." A POSITA would not understand such a hypothetical dual flush mechanism to constitute a "dual flush canister." (Ex. I, ¶ 42).

Moreover, Fluidmaster's construction gives the term "canister" a much broader meaning than what its own purported expert, Mr. Maple, testified as the meaning of "canister." As discussed above, Mr. Maple states in his declaration that a POSITA would know a "canister" is something that "looks like a can" and that a can "has a cylindrical shape"—not "at least a partially cylindrical shape." (Ex. Q at ¶ 51). Therefore, Fluidmaster's proposed construction of this phrase is improper.

## V.   CONSTRUCTIONS OF THE REMAINING CLAIM TERMS IDENTIFIED ONLY BY FLUIDMASTER AS ALLEGEDLY NEEDING CONSTRUCTION

### A.   "gasket"  ('620 Patent: Claims 1, 21)

| Danco's Proposed Construction | Fluidmaster's Proposed Construction |
|---|---|
| Needs no construction needed; plain and ordinary meaning | "a non-adhesive object that creates a fluid seal which is maintained by compressive resilience" |

1.   Danco's Position

a.   No construction of this term is needed.

The term "gasket" is a straightforward term easily understood by a lay juror. As a result, Danco submits that construction of this term is unnecessary. *See Phillips*, 415 F.3d at 1314 ("In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words."). Moreover, claim scope was not disavowed anywhere in the specification or during prosecution of the '620 Patent. Accordingly, this phrase should be afforded its plain and ordinary meaning. *Unwired Planet*, 829 F.3d at 1358 ("We have recognized only two exceptions to this general rule [that claims are given their plain meaning]: 1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of a claim term either in the specification or during prosecution.").

Mr. Jones, an undisputed POSITA himself, declares that the term "gasket" would be understood by

a POSITA to have its plain and ordinary meaning and that a lay person would easily understand the correct meaning of this phrase. (*See* Ex. I at ¶ 44). Moreover, in its petitions for IPR of the patents-in-suit, Fluidmaster conceded that "each of the various claim terms [should] be given their plain meaning" and that it was *not* necessary to "propose any specific claim constructions for the terms" in the challenged claims. (Ex. L at 8). Because this term presents no ambiguity, the Court should find that no construction is necessary.

### b.   If construed, the term should be given its plain and ordinary meaning.

To the extent the Court elects to construe "gasket," the Court need only construe it according to the plain and ordinary meaning of the term. Fluidmaster agrees. (*See* Ex. L at 8) ("each of the various claim terms [should] be given their plain meaning"). Accordingly, Fluidmaster cannot overcome the "heavy presumption" in favor of giving this phrase its plain and ordinary meaning of the claim language. *Johnson Worldwide Assocs. v. Zebco Corp.*, 175 F.3d 985, 989 (Fed. Cir. 1999). A "gasket" is simply "a rubber ring, for placing around a joint to make it watertight." (*See* Ex. F ("a rubber, metal, or rope ring, for packing a piston or placing around a joint to make it watertight"); Ex. G ("a separate or attached sealer used in making and closing hermetic or liquid containers to ensure"). This language is so easily understood that further simplification is unnecessary and would only overcomplicate an otherwise easily understood phrase. (Ex. I at ¶ 45). In fact, the '620 Patent discloses several examples of a "gasket" that support this plain and ordinary meaning. (Ex. A at Figs. 1A-D, 2A-C, 3A-C, 4A-G, 6A-J, 7A, 8, 9A-C, 19, and 20; Ex. I at ¶ 46).

2.   Fluidmaster's Position

Fluidmaster's proposed "non-adhesive" limitation is unduly and improperly limiting. Whether or not a gasket includes an adhesive is irrelevant, as the purpose and function of a gasket is to provide a seal. There are even products called "gasket adhesive" (http://www.3m.com/3M/en_US/company-us/all-3m-products/~/3M-Neoprene-High-Performance-Rubber-and-Gasket-Adhesive-

1300?N=5002385+3293241328&rt=rud).” Adhesive gaskets are well known and commercial available (https://www.ramgaskets.com/self-adhesive-gaskets). (Ex. I at ¶ 47).

### B.   "detachably attached to the flush mechanism"   ('620 Patent: Claim 1)

| Danco's Proposed Construction | Fluidmaster's Proposed Construction |
|---|---|
| Needs no construction; plain and ordinary meaning. | "designed for direct separation and direct reattachment to the flush mechanism without degradation (referring to gasket)" |

#### 1.   Danco's Position

In view of Danco's proposed construction of "detachably attached" hereinabove, the claim term "detachably attached to the flush mechanism" needs no further construction.  (*See* Ex. I (Jones Decl.) at ¶¶ 49-50). Moreover, the parties have already agreed that the term "flush mechanism" should be afforded its plain and ordinary meaning without construction by the Court, and this part of the phrase in therefore undisputed. (Docket Entry #72 at 1).[4]

#### 2.   Fluidmaster's Position[5]

Fluidmaster's proposed construction for this term is the exact same construction it proposed for "detachably attached," addressed hereinabove. Accordingly, for the same reasons Fluidmaster's proposed construction for "detachably attached" is improper, Fluidmaster's proposed construction of "detachably attached to the flush mechanism" suffers from the same deficiencies: (a) Fluidmaster's construction inappropriately injects the phrases "direct separation" and "direct reattachment" into the alleged meaning of the claim phrase; (b) Fluidmaster's requirement that the gasket be "designed for

---

[4] *See U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997) ("Claim construction is a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims, for use in the determination of infringement. It is not an obligatory exercise in redundancy."); *see also O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008) ("[D]istrict courts are not (and should not be) required to construe every limitation present in a patent's asserted claims."); *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1207 (Fed. Cir. 2010) ("Unlike O2 Micro, where the court failed to resolve the parties' quarrel, the district court rejected Defendants' construction.").
[5] Fluidmaster contends in its chart attached to the JCCS that this term is "indefinite." (*See* Docket Entry #72-2 at 7-8). However, Fluidmaster failed to include in its timely served P.R. 3-3 Invalidity Contentions any grounds for alleged invalidity of Claim 1 due to indefiniteness of the term "gasket." Consequently, "[Fluidmaster] cannot now seek a determination that the patents-at-issue are invalid for indefiniteness through claim construction." *Auxilium Pharms.*, 2014 U.S. Dist. LEXIS 79962, at *12-13.

direct separation and direct reattachment" improperly adds limitations that are not necessary under the plain and ordinary meaning of the claim language; (c) this construction improperly rewrites the claim language to include the notion of reattachment; and (d) this construction wrongly requires the gasket to be re-attachable "without degradation." (*See* Ex. I at ¶¶ 33, 52); *see also K-2 Corp.*, 191 F.3d at 1364 ("[c]ourts do not rewrite claims; instead, [they] give effect to the terms chosen by the patentee").

### C.  "adaptor"  ('620 Patent: Claims 4, 11, 12, 21)

| Danco's Proposed Construction | Fluidmaster's Proposed Construction |
|---|---|
| Needs no construction; plain and ordinary meaning. | "any of various devices used in adjusting or fitting to each other the separate parts of a machine or apparatus whose design is such that adjustment or fitting would otherwise not be possible (as two pipes of different diameters)" |

1.  Danco's Position

**a.  No construction of this term is needed.**

The term "adaptor" is a straightforward term easily understood by a lay juror. As a result, Danco submits that construction of this term is unnecessary. *See Phillips*, 415 F.3d at 1314. Moreover, claim scope was not disavowed anywhere in the specification or during prosecution of the '620 Patent. Accordingly, this phrase should be afforded its plain and ordinary meaning. *Unwired Planet*, 829 F.3d at 1358. The term "adaptor" would be understood by a POSITA to have its plain and ordinary meaning, and a lay person would easily understand the correct meaning of this phrase. (*See* Ex. I at ¶ 54). Fluidmaster has conceded that it is *not* necessary to "propose any specific claim constructions" for the term "adaptor." (Ex. L at 8). As a result, no construction of this term is needed.

**b.  If construed, the term should be given its plain and ordinary meaning.**

To the extent the Court elects to construe "adaptor," the Court need only construe it according to the plain and ordinary meaning of the term.  Fluidmaster agrees. (*See* Ex. L at 8) ("each of the various claim terms [should] be given their plain meaning"). Accordingly, Fluidmaster cannot overcome the "heavy presumption" in favor of giving this phrase its plain and ordinary meaning of the claim

language. *Johnson Worldwide*, 175 F.3d at 989. An "adaptor" is simply "a connector for joining parts." (*See* Ex. J ("a connector for joining parts or devices having different sizes, designs, *etc.*, enabling them to be fitted or to work together]"); Ex. K ("any of various devices used in adjusting or fitting to each other the separate parts of a machine or apparatus")). This term presents no ambiguity, and it is so easily understood that further simplification is unnecessary and would only overcomplicate an otherwise easily understood phrase. (Ex. I at ¶ 55). In fact, the '620 Patent discloses several examples of an "adaptor" that support this plain and ordinary meaning. (Ex. A at Figs. 1A-D, 2A-C, 3A-C, 5, 6D-F, 7A-B, 8, 9A-B, 10A-D, 11A-B, 12-13, 15-24, and 28-44; Ex. I at ¶ 56).

2.   Fluidmaster's Position

Fluidmaster's proposed construction adds into the plain language of the claim term the limitation that the "design is such that adjustment or fitting would otherwise not be possible (as two pipes of different diameters)." This is an attempt by Fluidmaster to import a limitation into the meaning of a term based on how it is used, as opposed to what it is improperly imports a limitation from a preferred embodiment. *See Phillips*, 415 F.3d at 1323 ("[A]lthough the specification often describes very specific embodiments of the invention, [the Federal Circuit has] repeatedly warned against confining the claims to those embodiments."). Otherwise, this term presents no ambiguity, and Fluidmaster's proposed construction adds nothing that is not already present in the ordinary meaning of "adaptor" and should therefore be rejected.  *See U.S. Surgical*, 103 F.3d at 1568.

**D.   "rotatably coupled"  ('620 Patent: Claim 12)**

| Danco's Proposed Construction | Fluidmaster's Proposed Construction |
|---|---|
| Needs no construction; plain and ordinary meaning. | "coupled through rotation" |

1.   Danco's Position

**a.   No construction of this term is needed.**

The term "rotatably coupled" is a straightforward term easily understood by a lay juror. As a result,

Danco submits that construction of this term is unnecessary. *See Phillips*, 415 F.3d at 1314. Moreover, claim scope was not disavowed anywhere in the specification or during prosecution of the '687 Patent. Accordingly, this phrase should be afforded its plain and ordinary meaning. *Unwired Planet*, 829 F.3d at 1358. The term "rotatably coupled" would be understood by a POSITA to have its plain and ordinary meaning, and a lay person would easily understand the correct meaning of this phrase. (*See* Ex. I at ¶ 60). Fluidmaster has conceded that it is *not* necessary to "propose any specific claim constructions" for the term "rotatably coupled." (Ex. L at 8).  As a result, no construction of this term is needed.

### b.  If construed, the term should be given its plain and ordinary meaning.

To the extent the Court elects to construe "rotatably coupled," the Court need only construe it according to the plain and ordinary meaning of the term.  Fluidmaster agrees. (*See* Ex. L at 8) ("each of the various claim terms [should] be given their plain meaning"). Accordingly, Fluidmaster cannot overcome the "heavy presumption" in favor of giving this phrase its plain and ordinary meaning of the claim language. *Johnson Worldwide*, 175 F.3d at 989. "Rotatably coupled" is simply "connected by turning."  (*See* Ex. J ("turn around a center point" to "join or connect"); Ex. K ("mechanically connected," "capable of being rotated").  This language is so easily understood that further simplification is unnecessary and would only overcomplicate an otherwise easily understood phrase. (Ex. I at ¶ 61). In fact, the '620 Patent discloses several examples of "rotatably coupled" that support this plain and ordinary meaning.  (Ex. A at Figs. 1A-D, 2A-C, 3A-C, 5, 6D-F, 7A-B, 8, 9A-C, 10A-D, 11A-B, 12-13, 15-24, and 28-44; Ex. I at ¶ 62).

### 2.  Fluidmaster's Position[6]

Fluidmaster's proposed construction adds nothing that is not already present in the ordinary

---

[6] Fluidmaster contends in its chart attached to the JCCS that this term is "indefinite."  (*See* Docket Entry # 72-2 at 14). However, Fluidmaster failed to include in its timely served P.R. 3-3 Invalidity Contentions any grounds for alleged invalidity of Claim 12 due to indefiniteness of the term "rotatably coupled."  Consequently, "[Fluidmaster] cannot now seek a determination that the patents-at-issue are invalid for indefiniteness through claim construction." *Auxilium Pharms.*, 2014 U.S. Dist. LEXIS 79962, at *12-13.

meaning of "rotatably coupled" and should therefore by expressly rejected. (Ex. I at ¶ 62). *See U.S. Surgical*, 103 F.3d at 1568.

### E.  <u>"actuator"  ('620 Patent: Claim 22)</u>

| Danco's Proposed Construction | Fluidmaster's Proposed Construction |
|---|---|
| Needs no construction; plain and ordinary meaning. | Indefinite; if determined not to be indefinite, "part or assembly which causes movement" |

1.  <u>Danco's Position</u>

**a.  No construction of this term is needed.**

The term "actuator" is a straightforward term easily understood by a lay juror. As a result, Danco submits that construction of this term is unnecessary. *See Phillips*, 415 F.3d at 1314. Moreover, claim scope was not disavowed anywhere in the specification or during prosecution of the '620 Patent. Accordingly, this phrase should be afforded its plain and ordinary meaning.  *Unwired Planet*, 829 F.3d at 1358. The term "actuator" would be understood by a POSITA to have its plain and ordinary meaning, and a lay person would easily understand the correct meaning of this phrase. (*See* Ex. I at ¶ 65). Fluidmaster has conceded that it is *not* necessary to "propose any specific claim constructions" for the term "actuator." (Ex. L at 8).  As a result, no construction of this term is needed.

**b.  If construed, the term should be given its plain and ordinary meaning.**

To the extent the Court elects to construe "actuator," the Court need only construe it according to the plain and ordinary meaning of the term.  Fluidmaster agrees. (*See* Ex. L at 8) ("each of the various claim terms [should] be given their plain meaning"). Accordingly, the "heavy presumption" favors giving this phrase its plain and ordinary meaning of the claim language. *Johnson Worldwide*, 175 F.3d at 989. An "actuator" is simply "mechanism to start a process." (*See* Ex. J ("start a process; turn on"); Ex. K ("mechanism s by means of which something is moved or controlled indirectly instead of by hand"). This language is easily understood; further simplification is unnecessary and would only overcomplicate an otherwise easily understood phrase.  (Ex. I at ¶ 66).

2.  Fluidmaster's Position

While Fluidmaster contends that this term is "indefinite," it does not set forth in its portion of the Joint Claim Construction and Prehearing Statement its basis for such a contention. (*See* Docket Entry # 72-2 at 15-16). Nevertheless, Fluidmaster's proposed construction adds nothing that is not already present in the ordinary meaning of "actuator" and should therefore be expressly rejected. (Ex. I at ¶ 67). *See U.S. Surgical*, 103 F.3d at 1568.

**F.  "adapter"  ('687 Patent: Claim 14)**

| Danco's Proposed Construction | Fluidmaster's Proposed Construction |
|---|---|
| Needs no construction; plain and ordinary meaning. | "any of various devices used in adjusting or fitting to each other the separate parts of a machine or apparatus whose design is such that adjustment or fitting would otherwise not be possible (as two pipers of different diameters)" |

1.  Danco's Position

a.  **No construction of this term is needed.**

The term "adapter" is a straightforward term easily understood by a lay juror. As a result, Danco submits that construction of this term is unnecessary. *See Phillips*, 415 F.3d at 1314. Moreover, claim scope was not disavowed anywhere in the specification or during prosecution of the '620 Patent. Accordingly, this phrase should be afforded its plain and ordinary meaning.  *Unwired Planet*, 829 F.3d at 1358. The term "adapter" would be understood by a POSITA to have its plain and ordinary meaning, and a lay person would easily understand the correct meaning of this phrase. (*See* Ex. I at ¶ 69). Fluidmaster has conceded that it is *not* necessary to propose any specific claim constructions for the term "adapter." (Ex. S at 6).  As a result, no construction of this term is needed.

b.  **If construed, the term should be given its plain and ordinary meaning.**

To the extent the Court elects to construe "adapter," the Court need only construe it according to the plain and ordinary meaning of the term.  Fluidmaster agrees.  (*See* Ex. S at 6) ("each of the various claim terms [should] be given their plain meaning"). Accordingly, Fluidmaster cannot overcome the

"heavy presumption" in favor of giving this phrase its plain and ordinary meaning of the claim language. *Johnson Worldwide*, 175 F.3d at 989. An "adapter" is simply "a connector for joining parts." (*See* Ex. J ("a connector for joining parts or devices having different sizes, designs, *etc.*, enabling them to be fitted or to work together]"); Ex. K ("any of various devices used in adjusting or fitting to each other the separate parts of a machine or apparatus"). Therefore, this term presents no ambiguity, and it is so easily understood that further simplification is unnecessary and would only overcomplicate an otherwise easily understood phrase. (Ex. I at ¶ 70). In fact, the '687 Patent discloses several examples of an "adapter" that support this plain and ordinary meaning. (Ex. B at Figs. 10A-D, 11A-B, 12-13, 14A-B, 15-17, 18-23, and 28-44; Ex. I at ¶ 71).

      2.  Fluidmaster's Position[7]

Fluidmaster's proposed construction is incorrect, because it adds into the plain language of the claim term the limitation that the "design is such that adjustment or fitting would otherwise not be possible (as two pipes of different diameters)." (Ex. I at ¶¶ 72-73). This is an attempt by Fluidmaster to import a limitation into the meaning of the term "adaptor" based on how it is used, as opposed to what it is improperly imports a limitation from a preferred embodiment.  Otherwise, Fluidmaster's proposed construction adds nothing that is not already present in the ordinary meaning of "adapter" and should therefore by expressly rejected. (*Id.*)  *See U.S. Surgical*, 103 F.3d at 1568.

   **G.  "mate"  / "configured to mate" / "configured to mate to a flush valve opening" ('687 Patent: Claim 14)**

| Danco's Proposed Construction | Fluidmaster's Proposed Construction |
|---|---|
| Needs no construction; plain and ordinary meaning. | *mate*: "a custom-fit pair connected in a direct nesting relationship" |
| | *configured to mate*: "a pair designed to custom-fit in a direct nesting |

---

[7]  Fluidmaster contends in its chart attached to the JCCS t that this term is "indefinite."  (*See* Docket Entry # 72-2 at 16). However, Fluidmaster failed to include in its timely served P.R. 3-3 Invalidity Contentions any grounds for alleged invalidity of Claim 14 due to indefiniteness of the term "adapter."  Consequently, "[Fluidmaster] cannot now seek a determination that the patents-at-issue are invalid for indefiniteness through claim construction." *Auxilium Pharms.*, 2014 U.S. Dist. LEXIS 79962, at *12-13.

|  | relationship" |
|  | *configured to mate to a flush valve opening:* "a pair designed to custom-fit in a direct nesting relationship to a flush valve opening" |

1.  Danco's Position

### a.  No construction of these terms is needed.

Fluidmaster proposed three different iterations of the claim term "mate" for construction, all three of which terms emanate from the same element of Claim 14 of the '687 Patent. (Docket Entry # 72 at 2-3). The term "mate" is a straightforward term easily understood by a lay juror. (Ex. I at ¶ 75). As a result, Danco submits that construction of this term is unnecessary. *See Phillips*, 415 F.3d at 1314. No claim scope was disavowed anywhere in the specification or during prosecution of the '687 Patent with respect to these terms/phrases. Accordingly, they should each be afforded their plain and ordinary meaning.  *Unwired Planet*, 829 F.3d at 1358. The term "configured to mate" would be also be understood by a POSITA to have its plain and ordinary meaning. (Ex. I at ¶ 75). Fluidmaster has conceded that it is *not* necessary to propose any specific claim constructions for the terms "mate," "configured to mate," and "configured to mate to a flush valve opening." (Ex. S at 8).  As a result, no construction of these terms is needed.

### b.  If construed, the term should be given its plain and ordinary meaning.

To the extent the Court elects to construe any of the three iterations of "mate," "configured to mate," or "configured to mate to a flush valve opening," the Court need only construe them according to the plain and ordinary meaning of the terms/phrases. Fluidmaster agrees. (*See* Ex. S at 6) ("each of the various claim terms [should] be given their plain meaning"). Accordingly, Fluidmaster cannot overcome the "heavy presumption" in favor of giving these terms/phrases the plain and ordinary meaning of the claim language. *Johnson Worldwide*, 175 F.3d at 989. "Mate" simply means "to match." (*See* Ex. J ("to match or marry"). "Configured" simply means "arranged in a certain form." (*See* Ex. K ("to arrange in a certain form, figure, or shape"). The parties have already agreed that the

23

term "flush valve opening" should be given its plain and ordinary meaning. (Docket Entry No. 72 at 1). Therefore, this language is already so easily understood that further simplification is unnecessary and would only overcomplicate an otherwise easily understood phrase. (Ex. I at ¶¶ 75-76). In fact, the '687 Patent discloses several examples of "mat[ing] to a flush valve opening" that support this plain meaning.  (Ex. A at Figs. 1A-D, 3A-C, 5, 7A, 8, 9A-B, 10A-D, 15-17, and 18-23; Ex. I at ¶ 77).

2. Fluidmaster's Position[8]

This is an attempt by Fluidmaster to import the "direct nesting relationship" limitation that varies from the plain meaning of the terms and is not present in the claim language. (Ex. I at ¶¶ 79-80). *See Phillips*, 415 F.3d at 1323 ("[A]lthough the specification often describes very specific embodiments of the invention, [the Federal Circuit has] repeatedly warned against confining the claims to those embodiments."). Other than this improper injection of undue limitation, Fluidmaster's proposed construction adds nothing that is not already present in the ordinary meaning of "mate/configured to mate/configured to mate to a flush valve opening" and should therefore be expressly rejected. (Ex. I at ¶ 80). *See U.S. Surgical*, 103 F.3d at 1568.

### H.  **"basket structure"  ('687 Patent: Claims 4, 9, 13, 14, 19, 20)**

| Danco's Proposed Construction | Fluidmaster's Proposed Construction |
|---|---|
| Needs no construction; plain and ordinary meaning. | "a spacer having two parallel rings vertically separated by connecting members, the lower ring having a horizontal orientation (e.g. a floor)." |

1. Danco's Position

a.  **No construction of this term is needed.**

The term "basket structure" is a straightforward term easily understood by a lay juror. As a result,

---

[8] Fluidmaster contends in its chart attached to the JCCS that these terms/phrases are "indefinite."  (*See* Docket Entry # 72-2 at 18-19 and 21-22).  However, Fluidmaster failed to include in its timely served P.R. 3-3 Invalidity Contentions any grounds for alleged invalidity of Claim 14 due to indefiniteness of the any of the terms/phrases "mate," "configured to mate," or "configured to mate to a flush valve opening." Consequently, "[Fluidmaster] cannot now seek a determination that the patents-at-issue are invalid for indefiniteness through claim construction." *Auxilium Pharms.*, 2014 U.S. Dist. LEXIS 79962, at *12-13.

Danco submits that construction of this term is unnecessary. *See Phillips*, 415 F.3d at 1314. Moreover, claim scope was not disavowed anywhere in the specification or during prosecution of the '687 Patent. Accordingly, this phrase should be afforded its plain and ordinary meaning.  *Unwired Planet*, 829 F.3d at 1358. The term "basket structure" would be understood by a POSITA to have its plain and ordinary meaning, and a lay person would easily understand the correct meaning of this phrase. (*See* Ex. I at ¶ 82). Fluidmaster has conceded that it is *not* necessary to propose any specific claim constructions for the term "basket structure." (Ex. S at 6).  As a result, no construction of this term is needed.

**b.   If construed, the term should be given its plain and ordinary meaning.**

To the extent the Court elects to construe "basket structure," the Court need only construe it according to the plain and ordinary meaning of the term. Fluidmaster agrees. (*See* Ex. S at 6) ("each of the various claim terms [should] be given their plain meaning"). Accordingly, Fluidmaster cannot overcome the "heavy presumption" in favor of giving this phrase its plain and ordinary meaning of the claim language. *Johnson Worldwide*, 175 F.3d at 989. A "basket structure" is simply "basket-shaped structure." (*See* Ex. J ("anything like a basket in shape or use"); Ex. K ("something constructed or built"). This language is so easily understood that further simplification is unnecessary and would only overcomplicate an otherwise easily understood phrase. (Ex. I at ¶ 83). In fact, the '687 Patent discloses several examples of a "basket structure" that support this plain and ordinary meaning. (Ex. B at Figs. 10A-D, 14A-B, 15-23; Ex. I at ¶ 84).

2.   Fluidmaster's Position

Fluidmaster's proposed construction adds into the plain language of the claim term the limitations of "a spacer having two parallel rings vertically separated by connecting members, the lower ring having a horizontal orientation." (Ex. I at ¶ 86). This is an attempt by Fluidmaster to import a limitation into the meaning of a term based on how it is used, as opposed to what it is improperly imports a limitation from a preferred embodiment. *See Phillips*, 415 F.3d at 1323 ("[A]lthough the specification

often describes very specific embodiments of the invention, [the Federal Circuit has] repeatedly warned against confining the claims to those embodiments."). Otherwise, this term presents no ambiguity, and Fluidmaster's proposed construction adds nothing that is not already present in the ordinary meaning of "basket structure" and should therefore be rejected. (Ex. I at ¶ 86). *See U.S. Surgical*, 103 F.3d at 1568.

## I.   <u>"second end"  ('687 Patent: Claims 4, 13, 14, 20)</u>

| Danco's Proposed Construction | Fluidmaster's Proposed Construction |
|---|---|
| Needs no construction; plain and ordinary meaning. | "the lower ring having a horizontal orientation (e.g. a floor) of the basket structure." |

### 1.   <u>Danco's Position</u>

#### a.   No construction of this term is needed.

The term "second end" is an elementary term easily understood by a lay juror. As a result, Danco submits that construction of this term is unnecessary. *See Phillips*, 415 F.3d at 1314. Moreover, claim scope was not disavowed anywhere in the specification or during prosecution of the '687 Patent. Accordingly, this phrase should be afforded its plain and ordinary meaning.  *Unwired Planet*, 829 F.3d at 1358. The term "second end" would be understood by a POSITA to have its plain and ordinary meaning, and a lay person would easily understand the correct meaning of this phrase. (*See* Ex. I at ¶ 88). Fluidmaster has conceded that it is *not* necessary to propose any specific claim constructions for the term "second end." (Ex. S at 6). As a result, no construction of this term is needed.

#### b.   If construed, the term should be given its plain and ordinary meaning.

To the extent the Court elects to construe "second end," the Court need only construe it according to the plain and ordinary meaning of the term. Fluidmaster agrees. (*See* Ex. S at 6) ("each of the various claim terms [should] be given their plain meaning"). Accordingly, Fluidmaster cannot overcome the "heavy presumption" in favor of giving this phrase its plain and ordinary meaning of the claim language. *Johnson Worldwide*, 175 F.3d at 989. A "second end" is simply "the latter of two extremities." (*See* Ex. J ("being the latter of two equal parts"; "part or place at or adjacent to an

extremity"); Ex. K ("the portion of an area or territory that lies at or by the termination"). This language is so easily understood that further simplification is unnecessary and would only overcomplicate an otherwise easily understood phrase. (Ex. I at ¶ 89). In fact, the '687 Patent discloses several examples of a "second end" that support this plain and ordinary meaning. (Ex. B at Figs. 4D, 22A; Ex. I at ¶ 90).

2.   Fluidmaster's Position[9]

Fluidmaster's proposed construction adds into the plain language of the claim term the limitations of "the lower ring having a horizontal orientation (*e.g.*, a floor) of the basket structure." (Ex. I at ¶ 92). This is an attempt by Fluidmaster to import a limitation into the meaning of a term based on how it is used, as opposed to what it is improperly imports a limitation from a preferred embodiment. *See Phillips*, 415 F.3d at 1323. Other than this improper injection of gratuitous limitations, Fluidmaster's proposed construction adds nothing that is not already present in the ordinary meaning of "second end" and should therefore be expressly rejected. (Ex. I at ¶ 92). *See U.S. Surgical*, 103 F.3d at 1568.

**J.   "couple to the dual flush canister"  ('687 Patent: Claims 4, 14, 20)**

| Danco's Proposed Construction | Fluidmaster's Proposed Construction |
|---|---|
| Needs no construction; plain and ordinary meaning. | "connected to the dual flush canister by the user" |

1.   Danco's Position

**a.   No construction of this term is needed.**

The phrase "couple to the dual flush canister" is an elementary term easily understood by a lay juror. As a result, Danco submits that construction of this term is unnecessary. *See Phillips*, 415 F.3d at 1314. Moreover, claim scope was not disavowed anywhere in the specification or during prosecution of the '687 Patent regarding this phrase. Accordingly, this phrase should be afforded its plain and ordinary

---

[9] Fluidmaster contends in its P.R. 4-3 chart attached to the JCCS that this term is allegedly "indefinite."  (*See* Docket No. 72-2 at 27).  However, Fluidmaster failed to include in its timely served P.R. 3-3 Invalidity Contentions any grounds for alleged invalidity of Claims 4, 13, 14, or 20 due to indefiniteness of the term "second end."  Consequently, "[Fluidmaster] cannot now seek a determination that the patents-at-issue are invalid for indefiniteness through claim construction." *Auxilium Pharms.*, 2014 U.S. Dist. LEXIS 79962, at *12-13.

meaning. *Unwired Planet*, 829 F.3d at 1358. The phrase "couple to the dual flush canister" would be understood by a POSITA to have its plain and ordinary meaning, and a lay person would easily understand the correct meaning of this phrase. (*See* Ex. I at ¶ 94).  Fluidmaster has conceded that it is *not* necessary to "propose any specific claim constructions" for the term "second end." (Ex. S at 6).  As a result, no construction of this term is needed.

### b.  If construed, the term should be given its plain and ordinary meaning.

In view of Danco's proposed construction of "dual flush canister" hereinabove, the claim phrase "couple to the dual flush canister" needs no further construction. (*See* Ex. I at ¶ 95). The additional phrase "couple to" should be afforded its plain and ordinary meaning without construction by the Court. "Couple to" simply means "join or connect" to. (*See* Ex. J ("join or connect"); Ex. K ("mechanically connect"). This language is easily understood; further simplification is needless and would only overcomplicate an easily understood phrase.  (Ex. I at ¶¶ 94-96). *See U.S. Surgical*, 103 F.3d at 1568.

2.  Fluidmaster's Position

Fluidmaster's proposed construction adds nothing that is not already present in the ordinary meaning of "couple to the dual flush canister" and should therefore by expressly rejected.  *See U.S. Surgical*, 103 F.3d at 1568.

## VI.  **FLUIDMASTER'S CONTENTIONS AS TO CLAIM PHRASES PROPOSED TO BE COVERNED BY 35 U.S.C. § 112, PARA. 6**

Fluidmaster asserts that a number of phrases in the asserted claims of the '687 Patent should be governed by the means-plus-function provisions of 35 U.S.C. § 112, paragraph 6:

- "flush opening" / "a flush opening configured to mate to a basket structure of a dual flush canister for a toilet";

- "first end" / "the first end being configured to couple to a dual flush canister";

- "tab(s)" / "tabs extending inward";

- "the plurality of tabs being configured to engage a lip of a flush opening of a flush valve previously installed in the toilet";

28

- "adapter flush opening of a flush valve adapter"; and

- "circular support structure" / "a circular support structure configured to align the dual flush canister with the dual flush opening."

(Docket Entry # 72-2 at 17-38). Danco denies that any of these terms should be deemed by the Court to be so governed, and, instead, contends that they should all be properly afforded their plain and ordinary meaning as understood by one of ordinary skill the art.[10]

### A.   These terms are not "means-plus-function" claims under 35 U.S.C. § 112, para. 6

Under 35 U.S.C. § 112, ¶ 6 (pre-AIA), a claim element "may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof." In *Williamson v. Citrix Online, LLC*, the Federal Circuit revised the standard for determining whether a claim invokes mean-plus-function treatment under § 112, ¶ 6. *Williamson*, 792 F.3d 1339 (Fed. Cir. 2015). Specifically, the Federal Circuit held that the standard for determining whether a phrase invokes § 112, ¶ 6 is "whether *the words of the claim* are understood by persons of ordinary skill in the art to have a sufficiently definite meaning as the name for structure." *Id*. at 1349 (emphasis added). The use of the word "means" creates a presumption that § 112, ¶ 6 applies. *Id*. On the other hand, the absence of the word "means" creates a presumption that § 112, ¶ 6 does not apply. *Id*.

It is beyond dispute that *none* of the phrases suggested by Fluidmaster as invoking § 112, ¶ 6 uses

---

[10]  Of these 10 purported "means-plus-function" terms/phrases, Fluidmaster contends for the *very first time* in its P.R. 4-3 chart attached to the JCCS that the following seven terms/phrases are allegedly indefinite:
- "flush opening";
- "a flush opening configured to mate to a basket structure of a dual flush canister for a toilet";
- "the first end being configured to couple to a dual flush canister";
- "tab(s)"; "the plurality of tabs being configured to engage a lip of a flush opening of a flush valve previously installed in the toilet";
- "adaptor flush opening of a flush valve adaptor";
- "circular support structure"; and
- "a circular support structure configured to align the dual flush canister with the dual flush opening."

(See Docket Entry # 72-2 at 17-38). Fluidmaster also elected not to disclose in its P.R. 4-2 disclosure any contentions that these terms/phrases were indefinite. (*See* Ex. H at 5). Moreover, Fluidmaster failed to include in its timely served P.R. 3-3 Invalidity Contentions any grounds for alleged invalidity of any claims of the '687 Patent due to indefiniteness of these phrases.  Consequently, "[Fluidmaster] cannot now seek a determination that the patents-at-issue are invalid for indefiniteness through claim construction." *Auxilium Pharms*., 2014 U.S. Dist. LEXIS 79962, at *12-13.

the word "means." Because each of the above-referenced phrases lacks the word "means," each of them is presumed not to invoke § 112, ¶ 6. *Williamson*, 792 F.3d at 1349. Moreover, it is Fluidmaster's burden to establish that this presumption is overcome by demonstrating that the phrase either fails to recite sufficiently definite structure or recites function without reciting sufficient structure for performing that function. *Id*. Because none of these phrases even recite a specified function, they cannot be mean-plus-function elements. *See* 35 U.S.C. § 112, ¶ 6 (stating that a means-plus-function element must "express" a "specified function." Accordingly, Fluidmaster cannot rebut the presumption that § 112, ¶ 6 does not apply to these phrases, and the Court's construction of them is unnecessary.

**B.   Fluidmaster does not proposed a separate, specific construction for any of these claim phrases beyond the § 112, ¶ 6 allegations**

Danco's position is that none of these claim phrases, to the extent their meaning is disputed, need be construed by the Court. *See Phillips*, 415 F.3d at 1314. Moreover, no claim scope was disavowed anywhere in the specification or during prosecution of the '687 Patent with respect to these terms/phrases, and they should each be afforded their plain and ordinary meaning.  *Unwired Planet*, 829 F.3d at 1358. Fluidmaster, itself, has conceded that it is *not* necessary to "propose any specific claim constructions for the terms" in the challenged claims, including each of these terms/phrases. (Ex. S at 8). Danco agrees, and, as a result, no construction of these terms/phrases is needed.

Moreover, in neither its P.R. 4-2 disclosure nor the Joint Claim Construction Statement did Fluidmaster set forth a proposed a separate, specific construction for any of these claim phrases beyond its § 112, ¶ 6 allegations. As a result, if the Court agrees that Fluidmaster's assertions as to the applicability of § 112, ¶ 6 are, indeed, misplaced, then these phrases need no further construction by the Court and should be deemed to have their plain and ordinary meaning as understood by a POSITA.

**VII.   CONCLUSION**

For the reasons stated above, the Court should adopt Danco's proposed constructions (*see* Exhibit T). A Proposed Order setting forth the proper constructions is attached for the Court's convenience.

Respectfully submitted, this 17th day of July, 2017.

Respectfully,

*/s/ Eric G. Maurer*

Geoff Culbertson
Texas Bar No. 24045732
PATTON TIDWELL & CULBERTSON LLP
2800 Texas Boulevard
Texarkana, Texas 75503
Telephone: (903) 792-7080
Facsimile: (903) 792-8233
*gpc@texarkanalaw.com*

Eric G. Maurer
Georgia Bar No. 478199
Cynthia J. Lee (*pro hac vice*)
Georgia Bar No. 442999
Scott P. Amy
Georgia Bar No. 141416
THOMAS HORSTEMEYER LLP
400 Interstate North Parkway SE, Suite 1500
Atlanta, Georgia 30339
Telephone: (770) 933-9500
Facsimile: (770) 951-0933

*eric.maurer@thomashorstemeyer.com*
*cynthia.lee@thomashorstemeyer.com*
*scott.amy@thomashorstemeyer.com*

*Counsel for Plaintiff Danco, Inc.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION**

| | |
|---|---|
| DANCO, INC., | |
|     Plaintiff, | |
| v. | Civil Action No.: 5:16-CV-00073-JRG-CMC |
| FLUIDMASTER, INC., | |
|     Defendant. | |

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on July 17, 2017, I caused a true and correct copy of the foregoing

PLAINTIFF DANCO, INC.'S OPENING CLAIM CONSTRUCTION BRIEF to be served this day in

electronic form on all counsel of record via filing same with the Court via CM/ECF.

Respectfully submitted,

*/s/ Eric G. Maurer*

Geoff Culbertson
Texas Bar No. 24045732
PATTON TIDWELL & CULBERTSON LLP
2800 Texas Boulevard
Texarkana, Texas 75503
Telephone: (903) 792-7080
Facsimile: (903) 792-8233
*gpc@texarkanalaw.com*

Eric G. Maurer
Georgia Bar No. 478199
Cynthia J. Lee (*pro hac vice*)
Georgia Bar No. 442999
Scott P. Amy
Georgia Bar No. 141416
THOMAS HORSTEMEYER LLP
400 Interstate North Parkway SE, Suite 1500
Atlanta, Georgia 30339
Telephone: (770) 933-9500
Facsimile: (770) 951-0933
*eric.maurer@thomashorstemeyer.com*

*cynthia.lee@thomashorstemeyer.com*
*scott.amy@thomashorstemeyer.com*

*Counsel for Plaintiff Danco, Inc.*